UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

| | |
|---|---|
| AZIAH J. DWAN<br>INMATE #411246<br>MACDOUGALL CORRECTIONAL<br>1153 EAST ST. SOUTH<br>SUFFIELD, CT. 06080 | CIVIL NO.: UNASSIGNED<br><br>JURY TRIAL DEMANDED<br><br>DATED: |
| VS. | ORIGINAL COMPLAINT IN DAMAGES |

THE CHILDREN'S CENTER OF HAMDEN
1400 WHITNEY AVE.
HAMDEN, CT. 06517

DEPARTMENT OF CHILDREN AND FAMILIES
62 COMMERCIAL BOULEVARD
TORRINGTON, CT. 06790

HAMDEN POLICE DEPARTMENT
2900 DIXWELL AVE.
HAMDEN, CT. 06518

DETECTIVE INGLESE
2900 DIXWELL AVE.
HAMDEN, CT. 06518

LOGAN VANCE SULLIVAN & KORES, LLP.
733 EAST MAIN ST.
TORRINGTON, CT. 06790

JOHN R. LOGAN, ESQ.
733 EAST MAIN ST.
TORRINGTON, CT. 06790

JOHN DOES 1-5
1400 WHITNEY AVE.
HAMDEN, CT. 06517

JANE DOES 1-5
1400 WHITNEY AVE.
HAMDEN, CT. 06517

JOHN DOES 6-10
62 COMMERCIAL BLVD.
TORRINGTON, CT. 06790

JANE DOES 6-10
62 COMMERCIAL BLVD.
TORRINGTON, CT. 06790

JOHN DOES 11-15
2900 DIXWELL AVE.
HAMDEN, CT. 06518

JANE DOES 11-15
2900 DIXWELL AVE.
HAMDEN, CT. 06518

DONNA SAVOIA
62 COMMERCIAL BLVD.
TORRINGTON, CT. 06790

1. At all times herein mentioned the plaintiff, Aziah J. Dwan (Dwan), who is currently an inmate, #411246, incarcerated within and for the State of Connecticut (the state) in the custody and care of the Department of Correction (D.O.C., the department), being housed at the MacDougall Correctional Institute (MacDougall); is and was a minor dependent entrusted to the custody and care of the state and placed with The Children's Center of Hamden for residential and educational provision.

2. At all times herein mentioned the defendant, The Children's Center of Hamden (CCH), is and was a residential care facility providing housing and schooling to minors and juveniles with behavioral, mental and emotional problems, including minors in the custody and care of the Department of Children and Families.

3. At all times herein mentioned the defendant, Department of Children and Families (DCF), is and was a department of the state with duties and obligations that include, but may not be limited to; the custody, care and residential placement of behavioral, mental, emotional and at risk minors and juveniles, within their custody and care within the state.

4. At all times herein mentioned the defendant, Hamden Police Department (HPD), is and was a municipal law enforcement department of the Town of Hamden (the town), Connecticut, with duties and obligations of upholding the laws of the state, within the town.

5. At all times herein mentioned the defendant, Detective Inglese (Inglese), is and was a detective in the Hamden Police Department and is being sued herein in an individual capacity.

6. At all times herein mentioned the defendant, Logan Vance Sullivan & Kores, LLP., (the firm), is and was a law firm registered as a Limited Liability Partnership licensed to practice law through its partners and associates within the state.

7. At all times herein mentioned the defendant, John R. Logan (Logan), is and was an attorney licensed to practice law in the state and was a partner in the firm of Logan Vance Sullivan & Kores, LLP., and is sued herein in an individual capacity.

8. At all times herein mentioned the defendant, Donna Savoia (Savoia), is and was a case worker for the DCF, with duties and obligations for managing and supervising the care and treatment of minors and juveniles assigned to her who are in the custody and care of DCF, being sued herein in an individual and official capacity.

8A. At all times herein mentioned the defendants, John Does 1-5 (Johns 1-5), are and were unknown male supervisory staff and security members at CCH with duties and obligations to supervise the daily activities of the minors and juveniles in the custody and care of CCH, and are being sued herein in an individual and official capacity.

8B. At all times herein mentioned the defendants, Jane Does 1-5 (Janes 1-5), are and were unknown female supervisory staff and security personnel at CCH with duties and obligations to supervise the daily activities of the minors and juveniles in the custody and care of CCH, and are being sued herein in an individual and official capacity.

8C. At all times herein mentioned the defendants, John Does 6-10 (Johns 6-10), are are and were unknown male supervisory personnel and senior staff members of the DCF with duties and obligations to supervise the daily, weekly and monthly care, treatment and safe residential housing placement of the minors and juveniles in the custody and care of DCF, and any and all agents thereof; and are being sued herin in an individual and official capacity.

8D. At all times herein mentioned the defendants, (Jane Does 6-10 (Janes 6-10), are and were unknown female supervisory personnel and senior staff members of the DCF with duties and obligations to supervise the daily, weekly and monthly care, treatment and safe residential housing placement of the minors and juveniles in the custody and care of DCF, and any and all agents thereof; and are being sued herein in an individual and official capacity.

8E. At all times herein mentioned the defendants, John Does 11-15 (Johns 11-15), are and were unknown male supervisory personnel and senior staff members of the HPD with duties and obligations to investigate the commission of crimes within the town and arrest criminal offenders according to law, and are being sued herein in an individual and official capacity.

8F. At all times herein mentioned the defendants, Jane Does 11-15 (Janes 11-15), are and were unknown female supervisory personnel and senior staff members of the HPD with duties and obligations to investigate the commission of crimes within the town and arrest criminal offenders according to law, and are being sued herein in an individual and official capacity.

COUNT ONE:

9. Paragraphs 1-8 of the foregoing, are incorporated here by reference as if set forth at length and made a part hereof this the First Count.

10. Plaintiff believes and hereby alleges that in or about 2005, he was a juvenile, approximately age 9, surrendered to the custody and care of the DCF, by his biological parents; for residential placement to obtain care, treatment, supervision and schooling, due to behavioral, mental and emotional problems.

11. Upon information and belief plaintiff alleges Savoia was assigned as his case worker for DCF, responsible for direct management and care of Dwan.

12. Upon information and belief Johns 6-10 and Janes 6-10, were responsible for the supervision, oversight and management of Savoia, and her decisions and routines in monitoring of Dwan and his progress, safety and well being.

13. Plaintiff believes and thereby alleges that Savoia, Johns 6-10 and/or Janes 6-10, jointly or severally, ordered the placement of Dwan into the custody and care of CCH for residential housing, care, treatment, schooling and daily supervision and monitoring.

14. Plaintiff believes and thereby alleges that Johns 1-5 and Janes 1-5, were direct contact staff members and security personnel of CCH responsible for the daily monitoring of the minors and juveniles within the residential treatment program at CCH, to ensure their safe supervision and cohabitation of the residents.

15. As a resident, Dwan performed all of his daily activities of life, including, but not limited to; eating, sleeping, showering, attending school, treatment and therapy programs, and communal recreational and social programs; within the confines of CCH, and under the supervision of Johns 1-5 and/or Janes 1-5.

16. As a part of the communal recreational activities, Dwan mostly enjoyed playing video games with his friends and other residents, normally under the direct supervision of Johns 1-5 and Janes 1-5.

17. In or about September, 2005, Johns 1-5 and Janes 1-5, were negligent in supervision of the residents during communal activities, including the residents playing video games.

18. During several of these lax supervision periods, two of the residents, known to Dwan, A.D. and S.W.[1]; became selfish with the video game system and refused to take turns as was required.

19. Dwan argued with A.D. and S.W. that he had a right to use the game system, which on multiple occasions led to a pushing and shoving contest for control of the game system's controller.

20. Whereas Johns 1-5 and Janes 1-5 were not providing the direct supervision of the residents necessary to prevent the hostile and aggressive actions of residents, despite knowing that many of the residents had behavioral problems, including, hostile and violent outbursts; no one intervened to prevent the escalation of conflicts among the residents.

21. Following numerous conflicts, between A.D., S.W. and Dwan over the game system, on or about October 2005, while Dwan was in the communal shower area, A.D. and S.W. surprised Dwan by ripping open the shower curtain and threatening Dwan that if he yelled he would be beaten severely.

22. Working his way behind Dwan, S.W. grabbed Dwan's penis, scrotum and testicles forcibly yanking them down and backwards, as A.D. shoved Dwan to his knees in the shower stall.

23. As S.W. penetrated Dwan's rectum with his erect penis, A.D. forced his penis into Dwan's mouth.

24. Both A.D. and S.W. thrust their hips back and forth until each reached climax, and ejaculated into Dwan.

---

FN1: As the perpetrators were minors at the time of the offense, their names are being withheld pursuant to Connecticut General Statutes §54-86(e).

25. Normally, Johns 1-5 and/or Janes 1-5 were required to, and did, supervise the shower area, by sitting outside the communal showers and, when more than one person was in the showers; the staff member assigned the post supervising the showers, would walk into the showers every few minutes to ensure that there were no problems among the residents.

26. On the day of the sexual assault on Dwan, by A.D. and S.W., Johns 1-5 and Janes 1-5, were not properly supervising the shower area.

27. Defendant CCH, had a duty to ensure that its staff and employees were providing adequate and meaningful supervision of the residents at CCH, for the protection and safety of each of the residents and failed in this duty, by failing to provide adequate and meaningful supervision and oversight of its employees, staff members and security personnel.

28. Defendants Johns 1-5 and Janes 1-5, had a duty and obligation to ensure that the residents of CCH were properly supervised during communal activities, including, but not limited to; recreational activities, like playing video games; and during communal showers, to prevent altercations among the residents and protect the health and safety of the minors and juveniles entrusted to the safety and security of defendant CCH.

29. Defendants CCH, Johns 1-5 and Janes 1-5, knew or should have known that their actions, or lack thereof, would cause harm and injury to Dwan.

30. Dwan was harmed and injured as herein alleged, including, but not limited to:

(a) Dwan suffered extreme emotional and mental stress and anxiety that is continuing and ongoing, with feelings of hopelessness, helplessness, humiliation and embarassment, and;

(b) Dwan continues to suffer from Post Traumatic Stress Disorder (PTSD) symptoms that include timidity, anger, frustration, distrust of others and the inability to develop meaningful relationships and friendships with other persons, especially men, and;

(c) Dwan suffers migraine headaches, listlessness, nervous and upset stomach, and;

(d) Dwan suffers from insomnia and loss of sleep due to the reoccurring nightmares of the assault, where he is helpless to prevent his nightly revictimization by A.D. and S.W. as he relives the sexual assault, and worse, when on occasion those nightmares turn into torture of Dwan at the hands of A.D. and S.W., including acts of physical violence when Dwan attempts to resist in his dreams and others where his compliance leads to further acts of degradation and physical and sexual assault, up to and including the death of Dwan.

31. Defendants DCF, Johns 6-10 and Janes 6-10, had a duty and obligation to monitor the residential care facilities to which it placed minors and juveniles, including CCH; to ensure that defendants CCH, Johns 1-5 and Janes 1-5, were providing consistent, meaningful and adequate supervision of its residents necessary to ensure the safety and protection of the physical and mental well being of the minors placed in the custody and care of CCH, and failed in this duty.

32. Defendants DCF, Johns 6-10 and Janes 6-10, knew or should have known that Dwan would be harmed and injured by their actions, or lack thereof.

33. Dwan was harmed and injured as a direct and proximit cause of the defendants DCF, Johns 6-10 and Janes 6-10, actions or lack thereof as herein described above.

## LEGAL CLAIMS

34. The actions of defendants CCH, Johns 1-5 and Janes 1-5 constitute as negligent supervision, negligent infliction of emotional distress, cruel and unusual punishment, violation of Dwan's due process rights, sexual assault and assault and battery by and through a ward in their custody, control and supervision.

35. The actions of defendants DCF, Johns 6-10 and Janes 6-10 constitute as negligent supervision, negligent infliction of emotional distress, cruel and unusual punishment, a violation of Dwan's due process rights, sexual assault and assault and battery by and through a ward in their custody, control and supervision.

## PRAYER FOR RELIEF

36. Therefore, plaintiff prays this court grant the following relief:
    (a) Compensatory damages of $25,000,000, and;
    (b) Punitive damages of $25,000,000
    (c) Emotional distress in the amount of $10,000,000, and;
    (d) costs and attorney fees
    (e) such other relief as this court deems just and equitable.

COUNT TWO:

1-37. Paragraphs numbering 1-36 of the foregoing are incorporated here by reference as as if set forth at length and made a part hereof this the Second Count.

38. Despite the threats by A.D. and S.W., that they would severely beat Dwan, if he reported the sexual assault, Dwan reported the sexual assault to unknown CCH staff.

39. Defendant HPD was contacted and defendant Inglese interviewed Dwan, but, the plaintiff believes and thereby alleges, defendants HPD and Inglese did nothing else to investigate the sexual assault by A.D. and S.W. against Dwan.

40. Defendants HPD, Inglese, Johns 11-15 and Janes 11-15, did nothing to preserve evidence in the sexual assault upon Dwan from the shower area, or from Dwan's person, failing completely to even have a rape kit or any other type of physical exam performed on the minor Dwan, who could not himself go to the hospital for such an exam.

41. Defendants HPD, Johns 11-15 and Janes 11-15, had a duty to supervise the investigation of the sexual assault reported by Dwan, and failed in this duty.

42. Defendants DCF, Johns 6-10, Janes 6-10, CCH, Johns 1-5 and Janes 1-5; had a duty to supervise the investigation and preservation of evidence in the sexual assault reported by Dwan, including ensuring that Dwan received immediate, competent and complete medical care and treatment, and failed in this duty to the harm of Dwan.

43. Defendants DCF, Johns 6-10, Janes 6-10, CCH, Johns 1-5 and Janes 1-5; had a duty to provide Dwan immediate and ongoing mental health care and treatment to help Dwan function and recover from the immediate and ongoing mental and emotional trauma afflicted upon him by the sexual assault and failed in this duty.

44. Defendants Inglese, HPD, Johns 11-15 and Janes 11-15 had a duty to conduct a thorough and complete investigation, including the preservation of evidence, and including the biological samples from the offenders that may have revealed any biological DNA samples belonging to Dwan and would have led to the arrest and prosecution of A.D. and S.W. for the sexual assault; and defendants failed in this duty.

45. Defendants knew or should have known that their actions, or lack thereof would cause harm and injury to the plaintiff.

46. Dwan was harmed and injured as a direct and proximate cause of the defendants actions, or lack thereof; including, but may not be limited to:
    (a) Dwan suffered severe, extreme and ongoing mental and emotional stress and anxiety feeling like no one was on his side, and;
    (b) believing the offenders would never face justice for their actions, and;
    (c) fear and anxiety from his nightmares believing that the offenders may attempt to find him as they got older and commit the violent beating that A.D. and S.W. threatened would take place, because Dwan had reported the sexual assault; nightmares that continue to this day.

## LEGAL CLAIMS

47. Defendants actions, or lack thereof; as herein alleged has deprived Dwan of his right to due process, equal protections of the laws and equal public emoluments of both the United States Constitution and State of Connecticut Constitution, that inflicts upon Dwan cruel and unusual punishment.

48. Defendants actions, or lack thereof; as herein alleged, has negligently inflicted upon Dwan extreme and ongoing emotional and mental stress, anxiety, depression, anger and frustration.

PRAYER FOR RELIEF

49. Therefore, the plaintiff prays this court grant the following relief:

   (a) Compensatory damages of $10,000,000, and;

   (b) Punitive damages of $10,000,000, and;

   (c) Emotional damages of $10,000,000, and;

   (d) costs and attorney fees, and;

   (e) such other and further relief as this court deems just and equitable.


COUNT THREE:

1-50. Paragraphs numbering 1-49 of the foregoing are incorporated her by reference as if set forth at length and made a part hereof this the Third Count.

51. Following the sexual assault, Dwan's biological mother, Melissa M. Dwan (Ms. Dwan), engaged the services of defendant John R. Logan Esq., and the firm of Logan & Mencuccini, LLP., now re-named as the defendant, Logan Vance Sullivan & Kores, LLP. (Logan and the firm, respectively), to represent Ms. Dwan and the plaintiff in a civil action for malpractice and negligent supervision, (the representation).

52. The representation was entered into by written instrument dated October 14, 2005, and endorsed by defendant Logan, on behalf of himself and the law firm, (the agreement).

53. Per the agreements terms, the parties, Ms Dwan, Logan and the firm, promised, covenanted and agreed, that Logan and the firm "shall be principally involved with [the] case **unless and until** [the parties] **agree** to the contrary." (emphasis added).

54. Ms. Dwan relied on the representations of Logan and the firm, to act in the interests of Dwan and on his behalf, to secure the recovery of damages for the physical, emotional and mental damages inflicted upon Dwan, by A.D. and S.W., as wards of the state; pursuant to the terms of the agreement.

55. The representation was supposed to include the investigation of the sexual assault, including the gathering of documents, reports, ledgers, logs and such other and further tangible materials as were necessary to the prosecution of Dwan's claims against the state, CCH, HPD, and the offenders; as well as the actual prosecution of the civil litigation necessary to secure and preserve the rights of Dwan.

56. Instead, on or about December 11, 2006, Logan unilaterally drafted, or authorized the drafting of correspondence; to Ms. Dwan, breaching the terms of the agreement by terminating the representation, and delivered same to Ms. Dwan, (the termination letter).

57. Ms. Dwan did not agree to the termination of the representation as was required by the terms of the agreement drafted by Logan and the firm.

58. Defendants, Logan and the firm, knew or should have known that their failure to perform under the terms of the agreement, and within their duties to their client under the law and Rules of Professional Conduct would cause Dwan harm and injury.

59. The agreement and its terms, in benefit of Dwan, was fraudulently concealed from Dwan, and therby requiring tolling of the statute of limitations on a written contract.

60. The termination letter, drafted a full thirteen (13) months after defendants Logan and the firm had already accepted the case and entered into the agreement; fraudulently sought to deceive Ms. Dwan, alleging that defendants "decline to accept this matter as a file in our office." Id. at *1.

61. The defendants had already accepted the matter as a case file in their office by the inception and endorsement of the agreement.

62. Defendants, Logan and the firm, knew or should have known that their actions, or lack thereof, would cause Dwan harm and injury.

63. Dwan was harmed and injured as a direct and proximate cause of the defendants actions, or lack thereof, including but not limited to:
    (a) added emotional distress and anxiety, believing the defendants had violated his trust, depriving him of an advocate, and;
    (b) potentially permanently destroying Dwan's ability to recover damages for his injuries due to the loss of evidence, including, documentary, biological and the memories of witnesses, and;
    (c) causing Dwan depression, stress, and anxiety believing that counsel's failure to perform the tasks of adequate counsel, Dwan's ability to obtain justice against the offenders has been destroyed and lost to him by the failure of said defendants to perform the material terms of the agreement.

64. Defendants had a duty and obligation to protect the interests and rights of Dwan in regards to the sexual assault and failed in their duties.

## PRAYER FOR RELIEF

65. Therefore, plaintiff prays this court grant the following relief:

   (a) Compensatory damages of $10,000,000, and;

   (b) Punitive damages of $10,000,000, and;

   (c) Emotional distress damages of $10,000,000, and;

   (d) costs and attorney fees, and;

   (e) such other and further relief as this court deems just and equitable.

## PREVIOUSLY DISMISSED ACTIONS AND APPEALS

66. The plaintiff hereby certifies that he has not brought any past actions that were dismissed as frivolous, malicious, or failure to state a claim, such as to subject him to the three strikes rule.

## PAST ACTIONS

67. The plaintiff hereby states that he has brought a prior action on the same set of facts herein alleged, in State Court, captioned **Dwan v. Logan, et al**, HHD-CV-22-5073000-S, to address plaintiff's claims. However, plaintiff does not believe that action is adequate to protect his rights and files this in favor of federal jurisdiction over his claims against the state and municipal defendants.

## VENUE AND JURISDICTION

68. Plaintiff has brought this action for redress of constitutional violations under color of state law pursuant to 42 U.S.C. §1983.

69. This court has jurisdiction pursuant to 28 U.S.C. §1331, because it presents a federal question of law; §1343(a), for civil rights violations; and §1392(b)(2), whereas the events giving rise to these claims occurred in the District of Connecticut.

70. This court has pendente jurisdiction pursuant to 28 U.S.C. §§1361, 1367 and 1651.

71. This action is brought pursuant to the Rehabilitation Act and Title II of the Americans with Disabilities Act, 29 U.S.C. §706(7)(B) and §794.

### DECLARATION UNDER PENALTY OF PERJURY

72. I hereby declare under penalty of perjury that I am the plaintiff in the above complaint, that I have read the foregoing and the contents thereof are true and accurate to the best of my knowledge and belief and to those facts alleged upon information and belief I believe them to be true and correct. I understand that if I lie in this complaint I may be prosecuted for perjury and punished with as much as five (5) years in prison and or fined up to $25,000.00.

I therefore set forth my hand this _____ day of November, 2022, executed at Suffield, Connecticut                    By _____
                                                                                Aziah J. Dwan #411246
                                                                                MacDougall Correctional
                                                                                1153 East St. South
                                                                                Suffield, CT. 06080

### CERTIFICATION OF SERVICE

The undersigned certifies the foregoing was submitted _____ for e-filing to:

The undersigned certifies that the foregoing was e-filed to the court, but, whereas the defendants have not been served, it has not been e-filed to the non-parties.

By _____
Plaintiff