## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

AZIAH DWAN                              :
    **Plaintiff,**                      :
                                       :      **No. 3:22-cv-1539 (VLB)**
  **v.**                                   :
                                       :
**CHILDREN'S CENTER OF HAMDEN;** :      **June 7, 2023**
**DEPARTMENT OF CHILDREN AND** :
**FAMILIES; HAMDEN POLICE** :
**DEPARTMENT; DETECTIVE** :
**INGLESE; LOGAN VANCE** :
**SULLIVAN & KORES, LLP; JOHN R.** :
**LOGAN, ESQ; JOHN DOES 1–15;** :
**JANE DOES 1–15; DONNA SAVOIA;** :
    **Defendants.**

## INITIAL REVIEW ORDER

Plaintiff Aziah Dwan alleges that, when he was 9 years old, he was sexually assaulted by two other minors at the Children's Center of Hamden ("CCH") where he was housed by the Department of Children and Families ("DCF"). This sexual assault took place in 2005. He brings claims against CCH, DCF, the Hamden Police, and various employees of these three entities under federal and state statutes.

Dwan is currently incarcerated in Connecticut state prison. The Prison Litigation Reform Act requires that federal courts review complaints brought by prisoners seeking relief against a government entity or officer or employee of a government entity. 28 U.S.C. § 1915A(a). Upon review, the court must dismiss the complaint, or any portion of the complaint, that is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. *See* 28 U.S.C. §§ 1915(e)(2)(b), 1915A(b).

1

I.      **Factual Allegations**

During the relevant time, Aziah Dwan was a minor placed under the care and custody of the State of Connecticut by the Department of Children and Families ("DCF").  (Am. Compl. ¶ 1.)  Dwan describes DCF as a state department "with duties and obligations that include, but may not be limited to: the custody, care and residential placement of at risk minors and juveniles who have mental, emotional and behavioral disabilities, within their custody and care within the state."  (*Id.* ¶ 3.)

Dwan brings this suit against several different groups of defendants.  First is the Children's Center of Hamden ("Center") and those affiliated with it, John Does 1–5 and Jane Does 1–5 (collectively, the "CCH Defendants").  (*See id.* ¶¶ 2, 2A, 2B.)  DCF placed Dwan with CCH, which, according to Dwan, is a residential care facility that provides housing and schooling to minors with behavioral, mental and emotional disabilities.[1]  (*See id.* ¶¶ 1–2.)  John Does 1–5 and Jane Does 1–5 are unknown supervisory staff and security personnel employed by CCH sued in their individual and official capacities.  (*Id.* ¶¶ 2A, 2B.)

Second is DCF, Donna Savoia, John Does 6–10 and Jane Does 6–10 (collectively, "DCF Defendants").  Defendant Savoia is a DCF case worker whose job was to manage and supervise the care and treatment of minors.  (*See id.* ¶ 3A.)

---

[1] The court may take judicial notice of matters of public record. *See, e.g., Mangiafico v. Blumenthal*, 471 F.3d 391, 398 (2d Cir. 2006); *United States v. Rivera*, 466 F. Supp. 3d 310. 313 (D. Conn. 2020) (taking judicial notice of BOP inmate locator information).  The Court takes judicial notice that CCH's mission statement is: "The Children's Center of Hamden is a behavioral health organization dedicated to helping individuals of all cultural backgrounds achieve their highest level of functioning through quality treatment, education and care."  *Mission Statement*, Children's Ctr. of Hamden, available at https://www.childrenscenterhamden.org/about/ (last accessed June 1, 2023).

John Does 6–10 and Jane Does 6–10 were unknown supervisory personnel and senior staff members whose job was to supervise the care and treatment of minors in DCF care sued in their individual and official capacities.  (*See id.* ¶ 3B.)

Third is the Hamden Police Department ("Hamden Police"), Detective Inglese, John Does 11–15 and Jane Does 11–15 (collectively, "Hamden Police Defendants").  Detective Inglese is a detective for the Hamden Police and is sued in his individual and official capacity.  (*See id.* ¶ 4A.)  John Does 11–15 and Jane Does 11–15 are unknown supervisory personnel and senior staff members employed by the Hamden Police sued in their individual and official capacities. (*See id.* ¶¶ 4B, 4C.)

Fourth is Logan Vance Sullivan & Kores, LLP ("Logan Vance") and its partner, John R. Logan, respectively registered and licensed to practice in Connecticut ("collectively, Logan Vance Defendants").  (*See id.* ¶ 5, 5A.)  Logan is sued in his individual capacity.  (*See id.*)

Dwan alleges that he was approximately 9 years old in 2005 when his biological parents placed him in the custody and care of DCF.  (*Id.* ¶ 8.)  Savoia was assigned as his case worker.  (*Id.*)  Dwan believes that John and Jane Does  6–10 ordered him to be placed in CCH's care and custody. (*See id.* ¶ 11.)  John and Jane Does 1–5 were responsible for supervising minors at CCH.  (*See id.* ¶ 12.)

In September 2005, Dwan argued with two other residents, A.D. and S.W., on multiple occasions, because they were "selfish with the video game system and refused to take turns as was required."  (*Id.* ¶ 16.)  The argument led to pushing and shoving on multiple occasions.  (*See id.* ¶ 17.)  He alleges that John and Jane

Does 1–5 failed to supervise and de-escalate these arguments, and that their failure to directly supervise these incidents was "wanton and reckless disregard" for his safety given they knew many residents had behavioral issues.  (*See id.* 15, 18.)

In October 2005, A.D. and S.W. approached Dwan while he took a shower in the communal showers.  (*See id.* ¶ 19.)  S.W. anally penetrated Dwan and A.D. forced his penis into Dwan's mouth. (*See id.* ¶¶ 20–22.)

Typically, John and Jane Does 1–5 sat outside the communal showers and, in circumstances when more than one individual showered, they periodically entered to make sure the residents did not have any issues.  (*See id.* ¶ 23.)  On the day A.D. and S.W. sexually assaulted Dwan, Defendants were not properly supervising the shower area "in wanton and reckless disregard for the just rights and safety of Dwan."  (*Id.* ¶ 24.)

Dwan reported the sexual assault to an "unknown CCH staff."  (*Id.* ¶ 42.)  CCH staff then contacted Hamden Police and Detective Inglese interviewed him, but the CCH Defendants encouraged the detective not to investigate the issue "to recklessly and maliciously protect themselves from liability and cover-up their own misconduct and failures."  (*Id.* ¶ 43.)  The Hamden Police and Detective Inglese failed to preserve evidence of the sexual assault, including by failing to have a rape kit or performing another medical examination on site.  (*See id.* ¶ 44.)

As a result of the sexual assault and the subsequent botched investigation, Dwan suffered and continues to suffer extreme emotional and mental distress, anxiety, hopelessness, helplessness, humiliation and embarrassment.  (*Id.* ¶¶ 28, 49.)  He suffers from post-traumatic stress disorder symptoms "that include

timidity, anger, frustration, distrust of others and the inability to develop meaningful relationships and friendships with other persons, especially men." (*Id.*) He also experiences migraines, listlessness, nervous and upset stomach, insomnia, and recurring nightmares about the incident. (*Id.*)

After the sexual assault, Dwan's biological mother, Melissa M. Dwan, hired the Logan Vance Defendants to represent them for the violations of Dwan's "rights stemming from the sexual assault." (*Id.* ¶ 59.) Dwan, through his mother, entered into a retainer agreement with the Logan Vance  Defendants that stated the firm "shall be principally involved with [the] case <u>unless and until</u> [the parties] <u>agree</u> to the contrary." (*Id.* ¶ 61.)  However, on December 11, 2006, Attorney Logan terminated the representation against the will of Dwan and his mother. (*Id.* ¶¶ 64–65.)  The letter communicating termination "fraudulently sought to deceive Ms. Dwan, alleging the defendants 'decline to accept this matter as a file in our office.'" (*Id.* ¶ 68.)

## II.    <u>Causes of Action</u>

Plaintiff structures his Amended Complaint into three Counts against Defendants—based on the sexual assault, the investigation, and the legal representation—but he raises far more causes of action within each Count.  Count One (relating to the sexual assault) includes (a) negligent supervision, negligent infliction of emotional distress, cruel and unusual punishment, a violation of due process rights, sexual assault and sexual assault and battery against the CCH Defendants; (b) these same claims stated in (a) against the DCF Defendants; (c) discrimination based on Dwan's disability in violation of the Rehabilitation Act, 29

U.S.C. § 794, and the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12202 against the CCH and DCF Defendants; (d) discrimination by a state agency based on Dwan's emotional, mental and behavioral disabilities in violation of Conn. Gen. Stat. §§ 46a-58, 46a-69, 46a-71(a), 46a-76(a) & 46a-99 against the CCH and DCF Defendants; (e) and unlawful use of force against another for the purpose of depriving that person the equal protection of the laws in violation of Conn. Gen. Stat. §§ 53-37b, 52-571a against the CCH and DCF Defendants.

Count Two (relating to the investigation) includes (a) a due process right violation, equal protection right violation, and cruel and unusual punishment all in violation of the federal and state constitutions against the Hamden Police Defendants; (b) negligent infliction of emotional distress against the Hamden Police Defendants; (c) wanton, reckless or malicious conduct; and (d) the causes of action stated in Count One's (c), (d) and (e) against the Hamden Police Defendants.

Count Three (relating to the legal representation) includes legal malpractice, breach of contract, breach of fiduciary duties, and negligent infliction of emotional distress against the Logan Vance Defendants.

III.   **Discussion**

The Court starts this discussion by acknowledging that the sexual assault described in the Amended Complaint is tragic and heart-breaking. Notwithstanding the facts as alleged, the Court must conclude that Dwan's ability

to recover damages under the federal statutes he listed are barred by the applicable statutes of limitations.[2]

The "statute of limitations" is defined as "a time limit for suing in a civil case, based on the date when the claim accrued (as when the injury occurred or was discovered)." *Statute of Limitations*, Black's Law Dictionary (11th ed. 2019). Dwan's federal claims are brought under the Rehabilitation Act, the ADA, and—with respect to his due process, equal protection, and cruel and unusual punishment claims—42 U.S.C. § 1983. When a federal statute does not explicitly contain its own statute of limitations, as is the case for all three statutes here, "federal courts should select the most appropriate or analogous state statute of limitations." *Goodman v. Lukens Steel Co.*, 482 U.S. 656, 660 (1985), *superseded by statute as stated in Jones v. R.R. Donnelley & Sons Co.*, 541 U.S. 369 (2004). All three statutes are subject to § 52-577 of the Connecticut General States, which is a three-year statute of limitations period for personal injury in general. *See M.D. v. Southington Bd. of Educ.*, 334 F.3d 217, 224 (2d Cir. 2003) (Rehabilitation Act); *Walker v. Jastremski*, 430 F.3d 560, 562 (2d Cir. 2005) (42 U.S.C. § 1983); *Purcell v. New York Inst. of Technology – Coll. of Osteopathic Med.*, 931 F.3d 59, 63 (2d Cir. 2019) (approving of lower courts applying § 52-577 to ADA claims and explicitly adopting New York's equivalent for the ADA).

---

[2] At the initial review stage, the Court may dismiss claims barred by the statute of limitations if the date on which the cause of action arose is not in dispute. *See Montague v. City of Rochester*, 2022 WL 16556154 (2d Cir. 2022) (summary order) (affirming district court's dismissal at § 1915A screening stage of claims filed outside statute of limitations period); *Jones v. Quiros*, No. 3:21-cv-1358 (SRU), 2022 WL 1291705, at *3 n.1 (D. Conn. Apr. 29, 2022) ("Although the statute of limitations is generally raised as an affirmative defense, the court may dismiss a claim where the allegations of the complaint demonstrate that the relief sought is time-barred.").

The Court notes that Connecticut carved out a longer statute of limitations period specific to personal injury of minors subjected to sexual assault.  Section 52-577d of the Connecticut General Statutes states, "Notwithstanding the provisions of section 52-577, no action to recover damages for personal injury to a person under twenty-one years of age, including emotional distress, caused by sexual abuse, sexual exploitation or sexual assault may be brought by such person later than thirty years from the date such person attains the age of twenty-one."  In other words, if Dwan was age 9 in 2005, he would have turned 21 in 2018 and so his statute of limitations will not run out until 2048 under this statute.

This lengthier statute of limitations does not apply to Dwan's federal claims. The United States Supreme Court explained in *Owens v. Okure*, 488 U.S. 235, 236 (1985)—a case in which the plaintiff was arrested by SUNY Albany campus police and assaulted while in custody, sustaining physical and emotional damages—that "where a State has one or more statutes of limitations for certain enumerated intentional torts, and a residual statute for all other personal injury actions" the "residual or general personal injury statute of limitations applies" to § 1983 claims. In establishing this rule, Justice Marshall explained that state statutes across the country utilize multiple statute of limitations for distinct intentional torts and that using the general personal injury limitations period would "provide courts with a rule for determining the appropriate personal injury limitations statute that can be applied with ease and predictability in all 50 States."  *Id.* at 243.  Circuit Courts have applied this rationale to causes of action brought under the Rehabilitation Act and the ADA.  *See Morse v. Univ. Vermont*, 973 F.2d 122, 126–27 (2d Cir. 1992) (rejecting

8

a "case-by-case approach to the statute of limitations questions" and adopting the state's general personal injury limitation period in Rehabilitation Act cases); *Everett v. Cobb Cnty Sch. Dist.*, 138 F.3d 1407, 1409 (11th Cir. 1998) ("Most civil rights actions are essentially claims to vindicate injuries to personal rights. Based on this guidance from the Supreme Court most circuits that have adopted a statute of limitations for ADA or Rehabilitation Act claims have looked to the state's limitations period for personal injury actions.").

With respect to his state law claims, the Court declines to exercise jurisdiction over them.  But this does not preclude plaintiff from filing his state law claims in state court.   Based on the extended statute of limitations under § 52-577d, it appears Dwan could bring suit for personal injury resulting from sexual assault in state court.  *See Doe v. Indian Mountain Sch., Inc.*, 921 F. Supp. 82, 83 (D. Conn. 1995) (stating "§ 52–577d applies to all claims for damages for personal injury to a minor caused by sexual abuse, not just claims against the perpetrator"). It will be up to the state court to determine whether any or all of the state and common laws he cited will be subject to a shorter statute of limitations period or dismissal on other grounds.

* * *

9

IV.  **Conclusion**

For the above reasons, this case is DISMISSED and the Clerk is directed to close the case.  Because the Court declines to exercise jurisdiction over the state law claims, Plaintiff may pursue the state and common law causes of action in state court.

IT IS SO ORDERED

_____

Hon. Vanessa L. Bryant
United States District Judge

Dated at Hartford, Connecticut: June 7, 2023